**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **LARANDALL LAMAR HILL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 09-CV-270-GKF-PJC |
| ) | |
| **CHRIS WITT, Sgt.,Tulsa Police Dep't;** ) | |
| **JEFF HENDERSON, Officer, Tulsa Police** ) | |
| **Dep't; JOHN BROWN, Officer, Tulsa** ) | |
| **Police Dep't; DAVID WALKER, Officer,** ) | |
| **Tulsa Police Dep't; JOSH PETREE,** ) | |
| **Officer, (ATF) Tulsa Police Dep't,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

This is a 42 U.S.C. § 1983 civil rights action. Plaintiff is a state inmate and appears *pro se*. He has been granted leave to proceed *in forma pauperis*. See Dkt. # 3. On September 25, 2009, Defendants Witt, Henderson, Brown, and Walker filed a Special Report (Dkt. # 16). On September 28, 2009, the same defendants filed a motion to dismiss or, in the alternative, motion for qualified immunity (Dkt. #s 17 and 18). On October 29, 2009, Defendant Josh Petree filed a Special Report (Dkt. # 22) and a motion to dismiss or, in the alternative, motion for summary judgment (Dkt. #s 21 and 23). Plaintiff failed to file timely responses to the dispositive motions. Therefore, by Order filed April 22, 2010 (Dkt. # 26), the Court provided notice to the parties that the motions would be adjudicated as motions for summary judgment and directed Plaintiff to file responses to the motions for summary judgment. Id. On April 30, 2010, Plaintiff filed a response to Defendants' motions (Dkt. # 27). Defendants Witt, Henderson, Brown, and Walker filed a reply (Dkt. # 29). Defendant Petree filed a reply (Dkt. # 28). For the reasons discussed below, the Court finds Defendants' motions for summary judgment shall be granted.

## BACKGROUND

The uncontroverted facts contained in the record provided by Defendants reveal that on July 17, 2008, Defendant Walker, a robbery detective, requested that the Tulsa Police Fugitive Warrants Squad and Federal Task Force take Plaintiff Larandall Hill into custody based on multiple outstanding warrants and for questioning as a suspect in two armed robberies. (Dkt. # 16, Ex. 6; Dkt. # 29, Ex. 1). Defendants Witt, Henderson, and Brown, all City of Tulsa Police Officers, and Petree, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, along with other law enforcement personnel, went to an apartment building located at 2440 East 5th Place in Tulsa, Oklahoma, to effect the arrest of Plaintiff. (Dkt. # 17, Exs. 1 and 2; Dkt. # 16, Ex. 6; Dkt. # 29, Ex. 1). Hill had recently been released from prison, had numerous arrest warrants, and was a suspect in two recent violent armed robberies, one involved a gun and the other was a stabbing. (Dkt. # 16, Ex. 6; Dkt. # 29, Ex. 2 (affidavit of John Brown providing factual history of crimes for which Plaintiff was convicted)). He was also "listed on TRACIS as a "FLIGHT ESCAPE RISK" and a PIRU certified gang member," and had numerous prior arrests for robbery, assault, stealing a vehicle, fraud, police obstruction, and weapons offenses. (Dkt. # 16, Ex. 6).

Two arrest teams were formed and positioned to the north and south of apartment number 4. (Dkt. # 16, Ex. 6; Dkt. # 29, Ex. 1). The north side team members were Defendants Petree, Witt, and Henderson, along with United States Postal Inspector Scott West. (Dkt. # 16, Ex. 6). They were positioned in apartment 2. (Dkt. # 29, Ex. 2). Defendant Brown, a robbery detective, provided surveillance of the front of the apartments from a concealed position. (Dkt. # 16, Ex. 6). The arrest teams received information from a confidential informant that Hill was armed with a black pistol, (Dkt. # 22, Ex. A; Dkt. # 29, Ex. 2), and was smoking "ice," or methamphetamine, in apartment 4

with a female, (Dkt. # 17, Ex. 1; Dkt. # 29, Ex. 2). The female was observed to come out of the apartment briefly and turn her head to look both ways before going back inside. (Dkt. # 16, Ex. 6; Dkt. # 29, Ex. 1). Hill then exited apartment 4, looked both ways, and proceeded to walk north on the sidewalk. (Dkt. # 16, Ex. 6). The north side arrest team was notified that Hill had something "black" in his hand. Id. Defendant Witt emerged from apartment 2 followed by Defendant Henderson. (Dkt. # 29, Ex. 1). They approached Hill with service weapons drawn, announced "Police," called Hill by name, and commanded Hill to stop and submit to arrest. Id. Hill turned quickly toward the officers, swung his arm holding the "black" object up and forward, and stepped toward Defendant Witt, closing the distance between the two to less than ten (10) feet. (Dkt. # 16, Ex. 6; Dkt. # 29, Ex. 1). Defendant Witt fired two shots, striking Hill in the torso both times. Id. The other members of the arrest team were still moving into position and were behind Defendant Witt. (Dkt. # 16, Ex. 6). None of the other law enforcement officers discharged their weapons. Id. Hill was later determined to be unarmed. The "black" object in Hill's hand was a cell phone. Id. After being treated at the scene, Hill was transported to the hospital for further treatment of his gunshot wounds. His injuries were not life threatening. Id. The Tulsa County District Attorney's Office reviewed the shooting and determined that because Sergeant Witt had a reasonable belief that deadly force was necessary to protect himself and others, the shooting was justified under Oklahoma law. (Dkt. # 16, Ex. 4).

Plaintiff was ultimately charged and convicted on his plea of guilty of First Degree Robbery, date of offense June 15, 2008, in Tulsa County District Court, Case No. CF-2008-3833, after former conviction of five (5) felonies, and sentenced to twenty-eight (28) years imprisonment. See Dkt. # 16, Ex. 3. He was also charged and convicted by a jury of Robbery With a Weapon (Count 1) and

Assault and Battery With a Deadly Weapon (Count 2), date of offense July 12, 2008, in Tulsa County District Court, Case No. CF-2008-3510, after former conviction of four (4) felonies, and sentenced to life imprisonment on both counts to be served concurrently. See Dkt. # 16, Ex. 1.

On May 6, 2009, Plaintiff filed his original civil rights complaint (Dkt. # 1). Plaintiff filed his amended complaint (Dkt. # 6) on June 1, 2009. Plaintiff claims his civil rights were violated during the July 17, 2008, incident when he was shot by Defendant Witt. He identifies two claims, as follows:

> Count I: Willing and wrongful act against my person with the intent to injure or maim without provafication [sic]. Buy [sic] shooting and injuring Mr. Larandall L. Hill whom was unarmed and harmed upon speculation by Chris Witt the shooter, accompanied by Jeff Henderson who as back-up to Mr. Witt failed to do his civil duties in turn which maliciously violated my person in concert and knowingly of an unarmed civilian with prejudice.
> Also, that John Brown, Josh Petree, David Walker who as a team as back, failed to do their civil duties and with prejudice did maliciously violate my person all in concert with one another and knowingly of an unarmed person. According to documentations [sic], I, Mr. Hill, was already under surveillance my movements being watched and documented by professionals who acted uncivilly and unprofessionally based on opinions and hypothesis which resulted in a wrongful and life threatening injury in the use of excessive force upon the Plaintiff and from all individuals immediately involved.
>
> Count II: Also that officers involved acted in concert with one another and failed to do their civil duties resulting in personal injury loss of body organs and nerve damage for life.

(Dkt. # 6). Plaintiff seeks "damages in the amount of $50,000 for loss of wages and 2,500,000 for punitive damages for nerve damage, pain and suffering from gunshot wounds and loss of bodily organ(s)." See id.

*ANALYSIS*

**A.  Summary Judgment Standard**

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Id. The Court cannot resolve material factual disputes at summary judgment based on conflicting affidavits.  Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).  The mere existence of an alleged factual dispute, however, does not defeat an otherwise properly supported motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48  (1986).  Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant. Hall, 935 F.2d at 1111.  Similarly, affidavits must be based on personal knowledge and set forth facts that would be  admissible in evidence.  Id. Conclusory or self-serving affidavits are not sufficient.  Id. If the evidence, viewed in the light most favorable to the nonmovant, fails to show that there exists a genuine issue of material fact, the moving party is entitled to judgment as a matter of law.  See Anderson, 477 U.S. at 250.

Where a *pro se* plaintiff is a prisoner, a court authorized "Martinez[1] Report" (Special Report) prepared by prison officials may be necessary to aid the Court in determining possible legal bases

---

[1] Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).

for relief for unartfully drawn complaints. See Hall, 935 F.2d at 1109. The Court may treat the Martinez Report as an affidavit in support of a motion for summary judgment, but may not accept the factual findings of the report if the Plaintiff has presented conflicting evidence. Id. at 1111. The Plaintiff's complaint may also be treated as an affidavit if it is sworn under penalty of perjury and states facts based on personal knowledge. Id. The Court must also construe Plaintiff's *pro se* pleadings liberally for purposes of summary judgment. Haines v. Kerner, 404 U.S. 519, 520 (1972). When reviewing a motion for summary judgment it is not the judge's function to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

In considering Defendants' motions for summary judgment, the Court has examined the amended complaint (Dkt. # 6), the Special Reports (Dkt. #s 16 and 22), the exhibits to the motions (Dkt. #s 17, 21), plaintiff's response (Dkt. # 27) to the motions for summary judgment, and the exhibits to the reply (Dkt. # 29). Plaintiff has not presented evidence to refute the summary judgment evidence provided by Defendants. He does, however, interpret the facts differently to argue that his claims are valid. (Dkt. # 27). The Court has considered all these materials insofar as they are related to the constitutional issues raised by Plaintiff.

**B. Excessive use of force**

Defendants contend that the doctrine of qualified immunity warrants summary judgment against Plaintiff on his claim of excessive use of force. See Dkt. #s 17 and 21. The Court agrees. The doctrine of qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. See Pearson v. Callahan, --- U.S. ---, ---, 129 S.Ct. 808, 815 (2009). Qualified immunity is "an entitlement not to stand trial or face the

other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). This qualified immunity inquiry requires analysis of two distinct questions: (1) whether, when taken in the light most favorable to the plaintiff as the party asserting the injury, the plaintiff demonstrates sufficient facts to show the public official's conduct violated plaintiff's constitutional rights; and (2) whether the constitutional right alleged to be violated was clearly established at the time of the alleged violation in a sufficiently analogous factual setting. See Saucier v. Katz, 533 U.S. 194, 201 (2001), *abrogated in part by* Pearson, --- U.S. ---, 129 S.Ct. 808. While it is often desirable to proceed initially with the first prong, a finding of qualified immunity may be appropriate on either question. See Pearson, 129 S.Ct. at 818. If both inquiries can be met in the affirmative, then the defendant is not entitled to qualified immunity. See Saucier, 533 U.S. at 201.

"In rebutting a qualified immunity claim at the summary judgment level, a plaintiff can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiff)." Axson-Flynn v. Johnson, 356 F.3d 1277, 1299 (10th Cir. 2004) (internal citation and quotation marks omitted). "Once the plaintiff makes this showing, the defendant bears the usual burden of a party moving for summary judgment to show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. at 1299-1300. "More specifically, the defendant must show that there are no material factual disputes as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time." Id. at 1300. "At all times during this analysis, we evaluate the evidence in the light most favorable to the nonmoving party." Id.

Defendants' use of force against Plaintiff is analyzed under the Fourth Amendment which guarantees citizens the right to be free from unreasonable searches and seizures. Graham v. Connor,

7

490 U.S. 386, 388 (1989); Terry v. Ohio, 392 U.S. 1, 8 (1968). The Fourth Amendment standard governing excessive force claims is well settled. "[L]aw enforcement officers must be 'objectively reasonable' in their searches and seizures." Dixon v. Richer, 922 F.2d 1456, 1461 (10th Cir. 1991). According to the Supreme Court,

> Determining whether force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake . . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight . . . . The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

Graham, 490 U.S. at 396 (alterations, citations, and quotations omitted). A court "must assess reasonableness from the perspective of a reasonable officer on the scene, 'rather than with the 20/20 vision of hindsight,' and consider that 'police officers . . . make split-second judgments-in circumstances that are tense, uncertain and rapidly evolving-about the amount of force necessary in a particular situation.'" Blossom v. Yarbrough, 429 F.3d 963, 967 (10th Cir. 2005) (quoting Graham, 490 U.S. at 396-97).

Applying the Graham standard to the instant case, the Court finds that Defendant Witt's actions were objectively reasonable in light of the facts and circumstances confronting him. Given liberal construction to the amended complaint, Plaintiff alleges that law enforcement officers subjected him to excessive force when he was shot twice during officers' efforts to arrest him. His claim is founded on the uncontroverted fact that he was unarmed at the time of the shooting. Other than the fact that he was shot while unarmed, Plaintiff fails to offer any evidence or statement of fact

that controverts the summary judgment evidence provided by Defendants. Plaintiff does not contest that he turned quickly and stepped towards Defendant Witt after being told to stop and submit to arrest. He does not claim that he did not know that the officers were law enforcement officers.[2] Plaintiff claims that the shooting resulted from the defendants' improper reliance on his past criminal history and on "speculation" concerning his role in the recent armed robberies. See Dkt. # 27.

To evaluate excessive force, the Court views the facts from the perspective of the officer. See Graham, 490 U.S. at 396-97. The focus of the inquiry is on the circumstances as they existed at the moment force was used. Id. In evaluating an excessive force claim, courts are to consider the totality of the circumstances. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004) (citing Sevier v. City of Lawrence, 60 F.3d 695, 699 (10th Cir. 1995)). Deadly force is "justified under the Fourth Amendment if a reasonable officer in Defendants' position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others." Jiron, 392 F.3d at 415 (citing Sevier, 60 F.3d at 699); see also Graham, 490 U.S. at 396. It is not constitutionally unreasonable for an officer to shoot a suspect advancing toward him while suspected of being armed. See, e.g., Jiron, 392 F.3d at 415; Romero v. Bd. of County Comm'rs, 60 F.3d 702, 703-04 (10th Cir. 1995) (intoxicated suspect shot by police officer after refusing instructions and approaching officer).

---

[2] Defendant Witt was dressed in plain clothes with a blue "ballistic carrier," marked with "Police" in large lettering on the front and back and a badge patch sewn to the left breast area, over his T-shirt. See Dkt. # 29, Ex. 1. The other officers were similarly attired. Also, Sgt. Hill yelled that they were police officers as they confronted Plaintiff.

Accepting the facts in the light most favorable to Plaintiff, the uncontroverted evidence establishes that immediately before Defendant Witt fired, he told Plaintiff to stop and submit to arrest. Plaintiff quickly turned and stepped towards him, holding what the officer thought was a gun. The fact that Plaintiff was actually unarmed is irrelevant. See Anderson v. Russell, 247 F.3d 125, 132 (4th Cir. 2001) (finding that the unarmed plaintiff's actions unwittingly caused the officer to reasonably fear imminent and serious physical harm). Similarly, although the law enforcement officers carefully planned Plaintiff's arrest and took safety precautions because of Plaintiff's history of violent conduct, that history does not factor into the Court's analysis of the reasonableness of Defendant Witt's decision to fire. See id. at 132; see also Jiron, 392 F.3d at 415 (stating that "[o]nly events immediately connected with the actual seizure may be considered"). Instead, as discussed above, the focus of the analysis is on the reasonableness of Defendant Witt's belief that Plaintiff posed a deadly threat to himself and others. Anderson, 247 F.3d at 132. Any reasonable officer in Defendant Witt's position would have imminently feared for his safety and the safety of others. Accordingly, because Defendant Witt had sound reason to believe that Plaintiff was armed, Defendant Witt acted reasonably by firing on Plaintiff as a protective measure before confirming that the black object in Plaintiff's hand was a gun. Defendant Witt is entitled to the entry of judgment as a matter of law as to Plaintiff's excessive force claim.

Furthermore, Plaintiff fails to explain how the actions of Defendants Henderson, Brown, Walker, and Petree violated his constitutional rights. To the extent Plaintiff claims those defendants failed to intervene or take steps to stop Defendant Witt from shooting him, he fails to explain what steps these officers could have taken. This shooting incident evolved rapidly. Nothing provided by Plaintiff suggests that any of the law enforcement officers knew that he was unarmed or that there

was time to intervene to stop the shooting. The Court finds Plaintiff has failed to demonstrate the existence of a genuine issue of material fact regarding the objective reasonableness of the law enforcement officers' conduct under the circumstances. Therefore, he has failed to demonstrate a violation of his Fourth Amendment rights. Because Plaintiff has not shown that the alleged conduct violated his rights under the Fourth Amendment, he has not satisfied the first prong of the qualified immunity analysis. See Axson-Flynn, 356 F.3d at 1300. Accordingly, Defendants Henderson, Brown, Walker, and Petree are entitled to qualified immunity on Plaintiff's claim of excessive use of force and, for that reason, their motions for summary judgment shall be granted.

**C. Conspiracy theory**

In Count II of his amended complaint, Plaintiff alleges that defendants acted in concert to deprive him of his constitutional rights. See Dkt. # 6. To the extent Plaintiff claims that Defendants entered into a conspiracy, the Court finds Plaintiff failed to raise a triable issue of fact on the necessary elements of a conspiracy claim. To survive summary judgment on this claim, Plaintiff must present evidence raising a triable issue of fact on three elements: (1) a shared conspiratorial objective, i.e., an agreement to deprive Plaintiff of his constitutional or statutory rights; (2) concerted action; and (3) actual deprivation of rights. See Snell v. Tunnell, 920 F.2d 673, 701-02 (10th Cir. 1990). Plaintiff need not prove an express agreement among Defendants to establish a conspiracy. See id. at 702; see also Jorgenson v. Montgomery, 2008 WL 216398, * 2 (D.Colo. Jan. 4, 2008) (unpublished). However, to survive summary judgment, Plaintiff must come forward with facts instead of unsupported allegations. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Plaintiff's conspiracy claim in this case is conclusory and completely lacks any supporting facts. Furthermore, the Court has determined above that there was no actual deprivation of rights. Plaintiff's conspiracy claim does not suffice to move beyond summary judgment.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The motion for summary judgment (Dkt. #s 17 and 18) filed by Defendants Witt, Henderson, Brown, and Walker is **granted**.
2. The motion for summary judgment (Dkt. #s 21 and 23) filed by Defendant Petree is **granted**.
3. A separate Judgment shall be filed in this matter.

SO ORDERED THIS 22nd day of July, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma